```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
  JEFFREY MEAD KURZON,                             :
                            Plaintiff,             :
                                                   :
               -v-                                 :        16-CV-4114 (JPO)
                                                   :
  DEMOCRATIC NATIONAL COMMITTEE and                :        OPINION AND ORDER
  NEW YORK STATE DEMOCRATIC                        :
  COMMITTEE,                                       :
                            Defendants.            :
----------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

Plaintiff Jeffrey Mead Kurzon filed the complaint in this action against the Democratic National Committee and the New York State Democratic Committee on June 3, 2016. In his complaint, Kurzon alleges that the process used by Defendants for selecting a nominee for President of the United States at the National Convention of the Democratic Party—in particular, the use of unpledged delegates, also known as "superdelegates"—violates his First and Fourteenth Amendment rights and is a breach of contract. Kurzon has moved for a preliminary injunction prohibiting Defendants from allowing superdelegates to cast votes at the Democratic National Convention. The Court held oral argument on the motion for a preliminary injunction on July 14, 2016. For the reasons that follow, the motion for a preliminary injunction is denied.

**I.     Background**

On July 25, 2016, the National Convention of the Democratic Party will convene in Philadelphia, Pennsylvania to select a nominee for the office of President of the United States. (Dkt. No. 2 Ex. B.). The nominee will be selected by a majority vote of delegates to the Convention. *Id.* Most delegates—85 percent of them—are "pledged" delegates, who are required to vote for a particular candidate at the Convention based on the result of their state's

(or territory's) primary election, caucus, or convention. (Dkt. No. 4 ("Compl.") ¶¶ 23, 24.) The remaining 15 percent of delegates are "unpledged" delegates, or "superdelegates," who may vote for the candidate of their choice. (*Id.* ¶ 24.) The superdelegates comprise party leadership, including, among others, members of the Democratic National Committee, Democratic members of Congress, and Democratic state governors. (*Id.*)

Kurzon is a New York resident and a member of the Democratic Party who has supported Senator Bernie Sanders for President. (Dkt. No. 26 ¶¶ 2, 11, 19.) He believes that "[t]he use of superdelegates dilutes the power of [his] vote, and the vote of millions of other Americans, to select the next President of because it creates a possibly insurmountable hurdle for a grassroots candidate like Senator Sanders." (*Id.* ¶ 29.)

Kurzon initially filed this suit on June 2, 2016 (Dkt. No. 1.), and filed the operative complaint in this action the following day. In his Complaint, Kurzon alleges that the rules permitting superdelegates to vote at the Convention violate his rights under the First and Fourteenth Amendments of the United States Constitution, and also amount to a breach of contract under New York state law. (Compl. ¶¶ 35-38, 42.)

## II. Discussion

### A. Standing

The jurisdiction of the federal courts is limited to "Cases" and "Controversies." U.S. Const. Art. III, § 2. "The 'irreducible constitutional minimum of standing contains three elements': (1) 'the plaintiff must have suffered an injury in fact' . . . ; (2) 'there must be a causal connection between the injury and the conduct complained of; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Kurzon alleges that he is a New York resident and a member of the Democratic Party. (Dkt. No. 26 ¶¶ 1, 2.) At argument he confirmed that he voted in the 2016 New York Democratic Party primary. (*See* Transcript of Oral Argument, July 14, 2016 ("Trans."), at 18.) Kurzon contends that, as a result of the participation of unpledged superdelegates, his primary vote and his right to participate in the selection of the Democratic candidate for President are "dilute[d]" in violation of the First and Fourteenth Amendments and in breach of the Charter, Bylaws, and Delegate Selection Rules of the Democratic National Committee. (Dkt. No. 26 ¶ 29.) He seeks an order enjoining superdelegates from voting at the Convention in order to ensure with certainty that the selection of the party's nominee more closely aligns with the popular vote as measured by state-level nominating contests.

Kurzon has sufficiently asserted an interest in equal representation at the Democratic National Convention to establish standing. *See Ripon Soc'y, Inc. v. Nat'l Republican Party*, 525 F.2d 567, 571-72 (D.C. Cir. 1975) (holding that individual political party members had standing to challenge national party delegate allocation formula); *see also Baker v. Carr*, 369 U.S. 186, 206-08 (1962). He alleges a constitutional injury caused by the superdelegate rule, which would be redressed by an injunction against enforcement of that rule. Though Defendants contend that Kurzon lacks standing due to the unlikelihood that his preferred candidate, Senator Sanders, will earn the party's nomination in any event (Dkt. No. 29.), his injury lies not in the *result* of the nomination process, but rather in his right to participate fully in that process. *See Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 280 n.14 (1978). He therefore has standing to bring this action.

### B. Preliminary Injunction

To be entitled to a preliminary injunction, a movant must establish (1) that he will suffer irreparable harm in the absence of preliminary relief; (2) a likelihood of success on the merits of the case; (3) that considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a preliminary injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). While the decision to grant or deny a preliminary injunction "rests in the district court's sound discretion . . . a preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 410 (S.D.N.Y. 2013).

### A. Likelihood of Success on the Merits

Kurzon asserts three claims in his Complaint: a First Amendment claim, a Fourteenth Amendment claim, and a breach of contract claim. He has not demonstrated a likelihood of success on the merits of any of these claims.

#### 1.

With respect to his First Amendment claim, Kurzon argues that the superdelegate rule "curbs [his] right to freely associate." (Dkt. No. 25.) He fails, however, to explain how the superdelegate rule infringes his rights. While there may be a limit beyond which actions by a political party will be found to violate an individual's First Amendment rights, Kurzon's desire to make the Democratic Party nominating process marginally more democratic does not approach that line.

First Amendment cases compel this conclusion. Under prevailing precedent, the First Amendment protects Kurzon's right to freely associate with the political party of his choosing,

*Williams v. Rhodes*, 393 U.S. 23 (1968), and ensures his ability to participate in a party primary election without substantial state interference, *Kusper v. Pontikes*, 414 U.S. 51 (1973). But it does not give him an absolute right to control the internal processes and priorities of an organization with which he chooses to associate. *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557 (1995).

In *New York State Board of Elections v. López Torres*, the Supreme Court upheld against First Amendment challenge a New York Law requiring the selection of state judicial nominees by a convention of unpledged delegates elected by party members. 552 U.S. 196 (2008). The challengers in *López Torres*, much like Kurzon here, sought an injunction mandating a direct primary election to select party nominees. *Id.* at 202. The Supreme Court emphasized that an individual's First Amendment associational rights do not empower him to compel nomination procedures that guarantee his preferred candidate a "fair shot" at winning a party's nomination. *Id.* at 205. In rejecting the First Amendment claim, the Court emphasized that selection by convention is constitutional. *Id.* at 206-07 ("Selection [of a party's nominee] by convention has been a traditional means of choosing party nominees. While a State may determine it is not desirable and replace it, it is not unconstitutional.").

Kurzon has not been fully excluded from participating in the nominating process. Indeed, a full 85 percent of voting delegates are pledged in accordance with the result of popular selection. Nor can he claim that his preferred candidate is excluded from participation or consideration. As in *López Torres*, Kurzon is not entitled to an injunction in order to guarantee him "a certain degree of influence" in the party's nomination process. *Id.* at 203.

Kurzon's claim must also be analyzed in light of the First Amendment rights of the political party. "A political party has a First Amendment right to . . . choose a candidate-

5

selection process that will in its view produce the nominee who best represents its political platform." *Id.* at 202; *see also Calif. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000). The political party's countervailing First Amendment rights—which would be clearly infringed by the injunction that Kurzon seeks in this case— make it significantly less likely that Kurzon will succeed on the merits of his claim, and render injunctive relief inappropriate on the basis of his first claim.

**2.**

With regard to the Fourteenth Amendment claim, while Kurzon's argument is not entirely clear, he appears to allege "that it is a violation of equal protection for one vote to be weighted heavier than another vote" in the party nominating process. (Trans. at 11.) In support of this claim, Kurzon cites only the Supreme Court's holding in *Bush v. Gore* that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." 531 U.S. 98, 104-05 (2000). But Kurzon nowhere explains why or how the superdelegate rule amounts to "arbitrary and disparate treatment," nor does he directly argue that the Equal Protection Clause mandates the application of the "one-person, one-vote" principle to party nominating conventions. *See Ripon*, 525 F.2d at 586-87 (holding that one-person, one-vote does not apply to party nominating conventions). In the absence of any argument to support his Fourteenth Amendment claim, Kurzon has not demonstrated a likelihood of success on the merits.[1]

---

[1] Additionally, in order to succeed on his constitutional claims, Kurzon must show that the actions of the party amount to state action. *See The Civil Rights Cases*, 109 U.S. 3, 11 (1883). The status of political party organizations as state actors is "a difficult and 'highly important question.'" *Ripon*, 525 F.2d at 576 (quoting *O'Brien v. Brown*, 409 U.S. 1, 4 (1972) (per curiam)). Given this Court's holding with respect to the merits of Kurzon's claims, it is unnecessary to resolve this difficult question. The Court notes, however, that the state action

**3.**

Finally, Kurzon alleges breach of contract. Specifically, he asserts that the superdelegate rule conflicts with Rule 13 of the Delegate Selection Rules, which provides that "[d]elegates shall be allocated in a fashion that fairly reflects the expressed presidential preference or uncommitted status of the primary voters" and with "the spirit of the Democratic Party (as set forth within the Preamble of its Charter)." (Dkt. No. 25; Dkt. No. 30.)

Even assuming that the national charter and state plan could be construed as enforceable contracts—and Kurzon provides no authority for such a construction—these documents are suffused throughout with references to the role of superdelegates, and clearly permit their use. Article II, section 4(h) of the Charter expressly provides for superdelegates "notwithstanding any provision to the contrary" in the section of the Charter describing delegate selection. (Dkt. No. 29 Ex. A.) Rule 20(C)(2) of the Delegate Selection Rules, which governs challenges to delegate selection based on violation of proportional representation, makes clear that Rule 13 (upon which Kurzon bases his argument) can only be challenged with reference to "pledged delegates," not unpledged superdelegates. (Dkt. No. 25 Ex. B.) And the New York State Delegate Selection Plan expressly defers to the national party rules in the case of a conflict. (Dkt. No. 25.) Given these provisions, Kurzon has failed to demonstrate a likelihood of succeed on the merits of his contract claim. Injunctive relief is thus unwarranted on this claim as well.

**B.      Remaining Factors**

"In the absence of proof of likelihood of success on the merits, in order to establish eligibility for injunctive relief, plaintiff must prove that there are sufficiently serious questions

---

requirement further compounds the unlikelihood of Kurzon's success on the merits. *See id.* at 574-76 (reserving the question of state action).

going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in its favor." *BigStar Entm't Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 219 (S.D.N.Y. 2000). The standard for granting a preliminary injunction also requires Kurzon to establish that the public interest will not be disserved by an injunction, and that he will suffer irreparable harm in the absence of the requested relief. *Winter*, 555 U.S. at 20.

Kurzon has not met this high standard. First, for the reasons explained above, Kurzon has not shown that there are "serious questions going to the merits" of (even short of likelihood of success on) his claims.

Second, the balance of hardships does not tip in Kurzon's favor and the public interest would be disserved by an injunction. An order enjoining or otherwise disrupting the well-established procedures at the Democratic National Convention just days before it is set to begin would upend settled expectations regarding the nomination process, which have shaped the entire election process thus far, and would risk judicial invasion of the constitutional rights of the party and its members. With respect to irreparable harm, while the Court assumes that the potential effect on Kurzon's associational rights may rise to the level of irreparable injury, he has not sufficiently satisfied the other requirements to warrant the extraordinary relief he requests.

### III. Conclusion

For the foregoing reasons, Kurzon's motion for a preliminary injunction is DENIED.

SO ORDERED.

Dated: July 18, 2016
      New York, New York

_____
J. PAUL OETKEN
United States District Judge