UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JEFFREY MEAD KURZON,

       Plaintiff,

  -v-

DEMOCRATIC NATIONAL COMMITTEE,

       Defendant.
------------------------------------------------------------X

16-CV-4114 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

  Plaintiff Jeffrey Mead Kurzon, an attorney now proceeding *pro se*, initiated this action against the Democratic National Committee ("DNC") and the New York State Democratic Committee ("NYSDC") on June 3, 2016. (Dkt. No. 4.) Kurzon initially sought a preliminary injunction to enjoin Defendants from applying the superdelegate voting rules at the Democratic National Convention; the Court denied that motion on July 18, 2016. (Dkt. No. 32.) Since the denial of the preliminary injunction, Kurzon has twice amended his complaint and terminated his counsel. He filed the operative Second Amended Complaint on December 16, 2016, naming only the DNC as a defendant and alleging a variety of state-law claims and a single federal common law "Democracy Tort." (Dkt. No. 50 ("SAC").)[1] The DNC moves to dismiss. (Dkt. No. 53.) For the reasons that follow, the DNC's motion to dismiss is granted.

**I. Background**

  The Court presumes familiarity with the background of this action, as set out in its Opinion and Order on Kurzon's motion for a preliminary injunction. *Kurzon v. Democratic*

---

[1] Though the Second Amended Complaint at times refers to the NYSDC as a Defendant (SAC ¶¶ 12-13), Kurzon earlier filed a letter consenting to the dismissal of the NYSDC from this action (Dkt. No. 44).

*Nat'l Comm.*, 197 F. Supp. 3d 638 (S.D.N.Y. 2016). The following facts are taken from the Second Amended Complaint and are presumed true for the purposes of this motion.

The SAC relies on much of the same factual underpinning as the initial complaint. Kurzon "seek[s] justice" for himself and others who were "wronged by the [DNC]'s illegal actions surrounding the 2016 Democratic Presidential Primary." (SAC ¶ 1.) The SAC quotes at length from the DNC Charter and Bylaws regarding the DNC's obligation of impartiality in the selection of a Presidential candidate. (*Id.* ¶¶ 16-18.) He then cites a host of news articles and internal DNC documents describing the DNC's alleged favoritism of Hillary Clinton in the 2016 Democratic Presidential Primary. (*Id.* ¶¶ 19-49.)

Where the SAC differs most notably from the initial complaint is in the causes of action it alleges. The SAC alleges eight different state-law claims—fraud, negligent misrepresentation, breach of fiduciary duties, negligence, prima facie tort, breach of contract, deceptive business practices under New York law, and unlawful trade practices under D.C. law—and a "Violation of Federal Common Law: Democracy Tort." (*Id.* ¶¶ 55-119.) Kurzon seeks declaratory and injunctive relief, as well as punitive damages in the amount $10,000,000. (*Id.* ¶ 120.) In contrast, the initial complaint raised claims for violation of Kurzon's rights under the First and Fourteenth Amendments to the United States Constitution and for breach of contract. (Dkt. No. 4 ¶¶ 35-42.)

## II.  Legal Standard

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "When resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings, and the plaintiff bears the burden to prove subject-matter jurisdiction by a preponderance of the evidence." *Morrow v. Ann Inc.*, No. 16 Civ. 3340, 2017 WL 363001, at *2 (S.D.N.Y. Jan. 24, 2017) (citing *Makarova*, 201 F.3d at 113).

## II. Discussion

The DNC argues that Kurzon's SAC should be dismissed under Rule 12(b)(1) for want of subject matter jurisdiction because he has failed to allege either diversity of citizenship or federal-question jurisdiction and because he lacks standing.[2] (Dkt. No. 54 at 5-15.) The DNC also argues that the SAC should be dismissed under Rule 12(b)(6) for failure to state a claim. (*Id.* at 15-24.) Because the Court lacks subject matter jurisdiction, the SAC must be dismissed; the Court reaches neither standing nor whether the SAC states a claim under Rule 12(b)(6).[3]

### A. Diversity of Citizenship

To properly allege diversity jurisdiction under 28 U.S.C. § 1332, Kurzon must present a claim between parties who are citizens of different states where the amount in controversy is greater than $75,000. 28 U.S.C. § 1332. The party seeking to invoke jurisdiction bears the burden of proving complete diversity and the amount in controversy by a preponderance of the evidence. *See Makarova*, 201 F.3d at 113.

---

[2] The SAC also refers to jurisdiction under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201. (SAC ¶ 2.) However, the DJA did not "expand the federal courts' subject-matter jurisdiction"; that is, it cannot serve as an independent font of jurisdiction where the Court would otherwise lack jurisdiction over an analogous suit for coercive relief. *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 66 (2d Cir. 2012) (citing *Skelly Oil v. Phillips Petroleum*, 339 U.S. 667, 671 (1950)).

[3] The Court does note, however, that Kurzon fails to address the DNC's arguments regarding his failure to state a claim on his state-law claims. (*See* Dkt. No. 55.) He addresses only his federal common-law claim. (*Id.* at 6-7.)

3

Now that the NYSDC is no longer a party to this action, the parties are completely diverse, as Kurzon is a New York citizen and the DNC is a citizen of Washington, D.C. (SAC ¶¶ 4, 8.) The DNC does not dispute this prong of the diversity analysis. (Dkt. No. 54 at 14.)

The DNC argues, however, that Kurzon has not satisfied the amount in controversy requirement. (*Id.* at 14-15.) In the SAC, Kurzon does not seek compensatory damages; rather, he seeks injunctive and declaratory relief and an award of $10,000,000 in punitive damages. (SAC ¶ 120.)

Punitive damages, where permitted, ordinarily may count toward the amount in controversy requirement. *See Courchesne Larose, Ltee. v. Ven-Co Produce, Inc.*, No. 10 Civ. 3123, 2010 WL 4877828, at *2 (S.D.N.Y. Nov. 30, 2010) (citing *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991)). However, a court is "not compelled to accept a claim of punitive damages . . . made for the purpose of conferring federal jurisdiction." *Id.* (quoting *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972), *aff'd on other grounds*, 414 U.S. 291 (1973)). In fact, a claim for punitive damages is to be given "closer scrutiny" than a claim for actual damages in determining whether it may go toward satisfying the amount in controversy requirement. *Id.* (quoting *Zahn*, 469 F.2d at 1033 n.1).

Here, Kurzon's prayer for punitive damages does not withstand this closer scrutiny. Kurzon seeks $10,000,000 in punitive damages "to deter and to make an example of Defendants." (SAC ¶ 120.) But Kurzon's claims stem from a unique set of circumstances—a major political party's management of its candidate selection process and internal affairs during the 2016 Presidential Primary—and an alleged injury that is generalized rather than personal. These factors, taken together, render it unlikely that a significant punitive damages award could be justified on the grounds of "mak[ing] an example" of the DNC to deter similar future conduct

4

and prevent similar injury. Furthermore, the absence of any claimed compensatory damages—and, in turn, the absence of a calculable ratio of punitive to compensatory damages—makes the award of millions of dollars in punitive damages all the more implausible. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). In closely scrutinizing Kurzon's punitive damages request in the context of the SAC as a whole, the Court concludes that in seeking a significant punitive damages award—absent any compensable injury—he has not satisfied the amount in controversy requirement by a preponderance of the evidence.

Nor does Kurzon's prayer for injunctive relief save his cause. Though Kurzon notes that the likely costs of complying with an injunction will exceed the $75,000 threshold (Dkt. No. 55 at 5), this fact is irrelevant. Courts in the Second Circuit are required to consider the amount in controversy from the *plaintiff's* perspective, *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006), and accordingly, may not consider the potential costs to a defendant of complying with an injunction, *Cohen v. KIND L.L.C.*, 207 F. Supp. 3d 269, 271 (S.D.N.Y. 2016).[4]

Kurzon has thus failed to adequately allege an amount in controversy sufficient for the exercise of this Court's diversity jurisdiction.

### B.    Federal Question

To invoke federal question jurisdiction under 28 U.S.C. § 1331, a plaintiff must plead "a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). A claim arises under federal law "where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right

---

[4] This perspective is not uniformly held across the circuits. *See, e.g., Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (explaining that in the Sixth Circuit, the cost of complying with an injunction may count towards the amount in controversy).

to relief necessarily depends on resolution of a substantial question of federal law." *Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 140 (2d Cir. 2005) (internal quotation marks omitted) (quoting *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d. Cir. 2000)), *aff'd*, 547 U.S. 677 (2006).

"A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh*, 546 U.S. at 513 n.10 (quoting *Bell v. Hood*, 327 U.S. 678, 682-683 (1946)). "[A] plaintiff cannot create federal jurisdiction under § 1331 simply by alleging a federal claim where in reality none exists." *Empire HealthChoice*, 396 F.3d at 140.

As a threshold matter, none of Kurzon's state-law claims necessarily depends on the resolution of substantial questions of federal law so as to serve as an independent hook for federal question jurisdiction; they are garden-variety state-law tort and contract claims that do not implicate federal law, and Kurzon does not argue otherwise. *See Empire HealthChoice*, 396 F.3d at 140.

Kurzon's only possible federal claim, then, is the cause of action he titles "Violation of Federal Common Law: Democracy Tort." (SAC ¶¶ 113-19.) (It is well settled that—assuming the claim is colorable—a claim under federal common law can support jurisdiction under Section 1331. *See Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985).) However, as Kurzon acknowledges, no such cause of action exists. (Dkt. No. 55 at 7 n.3.) And "the ability of federal courts to fashion federal common law . . . is 'severely limited.'" *Empire HealthChoice*, 396 F.3d at 140 (quoting *In re Gaston & Snow*, 243 F.3d 599, 606 (2d Cir. 2001)). Absent congressional authorization, federal courts may create federal common law

only where the operation of state law "significant[ly] conflicts" with "uniquely federal interests." *Id.* (alteration in original) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507, 508 (1988)). But Kurzon nowhere describes a conflict between state law and federal interests that might justify the creation of federal common law in this area—to the contrary, he asserts numerous state-law causes of action that might adequately redress the injuries he alleges. Accordingly, there is no ground for the creation of a new federal common law tort here, rendering Kurzon's federal claim wholly insubstantial and thus insufficient to support federal question jurisdiction.

Section 1983 also does not provide a basis for federal question jurisdiction. Though Kurzon mentions in the SAC that this action is brought under 42 U.S.C. § 1983, he fails to allege any violation thereunder. (SAC ¶ 2.) *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988))).

The difference between Kurzon's initial complaint and the SAC is instructive here. The initial complaint expressly raised claims under the First and Fourteenth Amendments to the United States Constitution. (Dkt. No. 4 ¶¶ 35-38, 42.) Accordingly, the bulk of the Court's Opinion and Order on the motion for preliminary injunction addressed Kurzon's likelihood of success on those claims. *Kurzon*, 197 F. Supp. 3d at 642-43. The SAC, however, asserts no such claims. There is no allegation of an infringement of Kurzon's constitutional rights, First Amendment, Fourteenth Amendment, or otherwise. And, with the exception of the so-called "Democracy Tort" addressed above, none of Kurzon's claims even approaches alleging the

violation of a right secured under federal law.  Accordingly, Kurzon has not pleaded a claim arising under Section 1983.

Given Kurzon's failure to plead a colorable federal claim, the Court lacks subject matter jurisdiction over this action.

**III.  Conclusion**

For the foregoing reasons, the motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 53 and to close the case.


SO ORDERED.


Dated: June 2, 2017
         New York, New York

_____
J. PAUL OETKEN
United States District Judge